THE CITY OF EVANSTON, Plaintiff-Appellee, v. EVANSTON FIRE FIGHTERS ASSOCIATION, Local 742, International Association of Fire Fighters, AFL-CIO-CLC, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—87—0473

Opinion filed September 22, 1989.

234

Roy D. Winn, of Sheaffer & Winn, of Wheaton, for appellants.

Siegel & Warnock, of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, City of Evanston, filed a complaint for a declaratory judgment and an injunction. The complaint alleged that the defendant Evanston Fire Fighters Association, Local 742, International Association of Fire Fighters, AFL-CIO-CLC (Evanston Fire Fighters Association or Association) and the defendant Blair Haltom (Haltom), president of the Evanston Fire Fighters Association, violated section 11(d) of the solicitation of funds for charitable purposes act of the State of Illinois (the Solicitation Act) (Ill. Rev. Stat. 1985, ch. 23, par. 5111(d)). The complaint further alleged that the defendants also violated various rules and regulations of the Evanston fire department by soliciting funds for various civic-related activities of the Evanston Fire Fighters Association. The injunction sought was to prohibit the defendants from utilizing the name "Evanston Fire Fighters Association" and their Maltese cross fire emblem in their solicitation campaigns.

Defendants moved to dismiss the City of Evanston's complaint on the grounds that the City of Evanston lacked authority and standing and was not empowered to bring an action under the Solicitation Act.

The defendants' motion to dismiss the City's complaint was based on the premise that section 9 of the Solicitation Act empowered only the Attorney General of the State of Illinois to bring an action for a violation of or for injunctive relief under the Solicitation Act. The defendants contended that section 9 conferred enforcement powers of the Solicitation Act only upon the Attorney General and that the City of Evanston lacked authority or standing to bring the instant action for an alleged violation of the Solicitation Act.

The trial court held that section 9 of the Solicitation Act did not preclude parties other than the Attorney General of the State of Illinois from bringing an action to enforce and for a violation of provisions of the Solicitation Act and denied the defendants' motion to dismiss the City of Evanston's complaint.

The defendants filed their answer and counterclaim in which they denied that their solicitation campaign was in violation of section 11(d) of the Solicitation Act. The defendants also alleged that the trial court lacked jurisdiction to declare the defendants in violation of the rules and regulations of the Evanston fire department. The defendants' answer also denied that their solicitation campaign was in violation of these rules and regulations. The defendants' counterclaim sought damages for Haltom's lost wages which he incurred while on suspension by order of the Evanston fire department fire chief, Sanders Hicks (Chief Hicks), because of Haltom's alleged violations of the Solicitation Act and the Evanston fire department's rules and regulations.

Following an evidentiary hearing on the permanent injunction, the trial court found that "the solicitation of funds by the defendants utilizing the name and logo Evanston Fire Fighters Association is unlawful and contrary to chapter 23, section 5111(d) of Ill. Rev. Stat. 1985 (The Solicitation Act) and Rule 5, paragraphs 17 and 18 of the Rules of the Evanston Fire Department." The trial court entered judgment in favor of the City of Evanston, plaintiff, and against defendants, ordered that the defendants' counterclaim be dismissed and that the defendants be "permanently enjoined from the solicitation of funds utilizing the name and logo of Evanston Fire Fighters Association, in accordance with the complaint."

The defendants appeal. One of the issues presented for review is whether the trial court erred in denying the defendants' motion to dismiss the City of Evanston's complaint, *i.e.*, whether the City of Evanston was authorized, empowered or had standing under section 9 of the Illinois Solicitation Act to bring an action for enforcement or for a violation of the Solicitation Act, or whether said act only em-

powered and authorized the Attorney General of the State of Illinois to bring such an action. Another issue presented for review is whether, on the evidence before it, the trial court erred in granting plaintiff, the City of Evanston, a permanent injunction and in holding that the defendants' use of the logo and name of "Evanston Fire Fighters Association" in soliciting funds was unlawful and contrary to section 11(d) of the Solicitation Act and Rule 5, paragraphs 17 and 18, of the rules of the Evanston fire department. Also presented for review is whether the trial court had jurisdiction to determine whether the defendant Haltom violated the rules and regulations of the Evanston fire department. The final issue presented for our review is whether the trial court erred in dismissing the defendants' counterclaim for monetary damages.

We reverse and remand with directions.

The following facts are pertinent to our resolution of the aforementioned issues and this appeal.

The defendants in the instant complaint are the Evanston Fire Fighters Association, Local 742, International Association of Fire Fighters, AFL-CIO-CLC and its president, Blair Haltom. At the time the complaint was filed by the City of Evanston, Haltom had been employed by the City of Evanston fire department for 10 years and had been a captain for two years. Captain Haltom was a crew chief of an engine company and as such was responsible for the apparatus and the men assigned to the engine. Haltom had been a member of the Evanston Fire Fighters Association for nine years and had been the Association's president for seven years.

The Evanston Fire Fighters Association was founded in 1872 and became chartered with the International Association of Fire Fighters as Local 742 in 1942. The International Association of Fire Fighters is the parent organization of all the local fire fighter associations in the United States and Canada. It lobbies on behalf of fire fighters regarding fire safety, pension rights and other matters related to the employment and working conditions of fire fighters.

The Evanston Fire Fighters Association negotiated with the City of Evanston over wages, hours, and terms and conditions of employment beginning in the 1950s and has had a formal written collective bargaining agreement with the City since 1972. In addition to its collective bargaining activities, the Association also engaged in fund raising to sponsor Thanksgiving dinners for the needy and toy collections during the Christmas season for needy children.

Haltom, as president of the Evanston Fire Fighters Association, was chief executive officer of the executive board as well as chairman

of all the Association's committees. Haltom was also responsible for the Association's fund raising. As part of this responsibility, Haltom, on behalf of the Association, entered into a contract with Ward Keil of Communication Publication in August 1986 to solicit money for the Association. Haltom and Keil agreed that Keil would sell advertisement space in a fire safety magazine in exchange for a donation to the Association. The magazine was to contain fire safety tips, fire awareness articles and instructions for dealing with other fire department-related emergencies and was to be distributed to the family homes in the City of Evanston.

Haltom directed Keil on the procedures that he and his solicitors were to follow while soliciting. The solicitor was required to present a letter, drafted by the Evanston Fire Fighters Association on the Association's stationery and signed by Haltom, to the person solicited, which letter introduced the solicitor and described the solicitation program. The Association had used this particular form letter on the Association's stationery since 1980 and had used a similar letter throughout prior years. The Association's stationery also included the Association's logo, a Maltese cross, which is a registered trademark of the International Association of Fire Fighters and which had been used by the Evanston Fire Fighters Association since 1942. The letter contained an introduction of the solicitor, a statement that he was receiving advertisement orders in support of the Association's first annual community awareness magazine, and a statement that the money was to be used to initiate a smoke detector program for Evanston homes. The letter and a more detailed description of the Maltese cross emblem are fully set forth later in this opinion.

Haltom also instructed the solicitors that they were to represent themselves as representatives of the Evanston Fire Fighters Association, that the solicitors were to contact the person to be solicited in a face-to-face meeting and not by telephone, and the solicitors were to provide Haltom's home telephone number to the persons solicited in the event they had any questions regarding the solicitation.

Pursuant to the agreement with Keil, the solicitor would receive a percentage of the funds raised by the solicitations to cover overhead costs, payment of employees, printing of the magazine, collecting information to be placed in the magazine and the distribution of the magazine to all the Evanston homes. The remaining funds were to be used to purchase smoke detectors by the Association. The Association would then sell the smoke detectors to the Evanston public at half price. The funds from the resale to the public would be used to fund the Association's related activities and expenses, such as a memorial

for Marty Leoni, a recently deceased City of Evanston fire fighter, gifts for retirees, and costs related to the Association's collective bargaining duties.

Haltom became aware of the City of Evanston's objections to the solicitation campaign when he was contacted by Joel Asprooth, city manager of the City of Evanston. Asprooth stated that he possessed one of the Evanston Fire Fighters Association introductory solicitation letters and he wanted to know if a solicitation campaign was being conducted by the Association. After Haltom informed Asprooth that a solicitation campaign was being conducted, Asprooth stated that this action would subject Haltom to discipline.

Haltom was ordered into the office of City of Evanston fire department fire chief Sanders Hicks, where he was told by Chief Hicks that he would be suspended on his next duty if the Association did not halt the solicitation campaign. Prior to Haltom's next scheduled duty day, he contacted counsel who represented the Evanston Fire Fighters Association, Roy D. Winn, and informed attorney Winn of the dispute between Chief Hicks, the Association and him. Shortly thereafter Haltom and attorney Winn met with City Manager Asprooth, Chief Hicks and Donald Anderson, counsel for the city of Evanston. During the meeting, the Evanston Fire Fighters Association offered to place a disclaimer in the introduction letter which would state that the City of Evanston had no connection with nor supported the Association's solicitation campaign. The City of Evanston, however, rejected the Association's offer and instead proposed that if the Association removed its Maltese cross logo and the word "Evanston" from the introduction letter, Haltom would be reinstated and the City of Evanston and the Evanston fire department would allow the Association to continue its solicitation. This proposal was rejected by attorney Winn and Haltom because they were of the opinion that the Evanston Fire Fighters Association had the lawful right to use its logo and name in its solicitation campaign.

Chief Hicks suspended Haltom on October 23, 1986, for 24 hours without pay. Chief Hicks met with Haltom again on October 26, 1986, and asked him whether he had complied with the order to cease the solicitation. Haltom told Hicks that he had not complied with the order, and Hicks suspended him without pay pending a due cause meeting and a predisciplinary hearing. A due cause meeting was held on October 27, 1986, between Chief Hicks, the City of Evanston's deputy city manager Tom Carlson, the City of Evanston's city personnel director Judy Witt, and Herb Hill from the City of Evanston's legal department to determine whether a rule infraction occurred and to set

the maximum disciplinary penalty. At the meeting, a maximum penalty of a 30-calendar-day suspension for Haltom was determined.

A predisciplinary hearing was held on October 29, 1986, with the defendants' attorney, Winn, Haltom, Hicks and Sharon Eiseman, an attorney from the City of Evanston's legal department. At the conclusion of the hearing, Chief Hicks found Haltom guilty of the alleged violations and suspended him for 30 days. The suspension was effective from November 1 to December 1, 1986.

Following the October 29, 1986, hearing, the Evanston Fire Fighters Association revised the solicitation introductory letter to include a description of the Evanston Fire Fighters Association and a statement that it was the Evanston Fire Fighters Association, and not the City of Evanston or the Evanston fire department, which was promoting the magazine and the solicitation. The Fire Fighters Association further revised the solicitation introductory letter by including therein a statement that the Fire Fighters Association was neither sanctioned nor supported by the City of Evanston or the Evanston fire department. This letter is also herein set forth in full.

Plaintiff, the City of Evanston, brought its complaint for a declaratory judgment and for injunctive relief under the solicitation of funds for a charitable purpose act (Ill. Rev. Stat. 1985, ch. 23, par. 5101 *et seq.*) (the Solicitation Act). The defendants urged in their motion to dismiss plaintiff's complaint that the Solicitation Act authorized only the Attorney General of the State of Illinois, and not the City of Evanston, to bring such a complaint. The trial judge denied the defendants' dismissal motion and, after an evidentiary hearing, granted plaintiff's requested injunctive and other relief. In so doing, the trial court held that the Solicitation Act empowered the City of Evanston to bring the action. We do not agree with this holding by the trial court.

The defendants persuasively argue that the legislature conferred the Solicitation Act's enforcement powers exclusively on the Attorney General of the State of Illinois and that the Act does not empower the City of Evanston to bring an action to enforce or for a violation of the Act's provisions, and the trial court therefore erred in denying the defendant's motion to dismiss the City of Evanston's complaint.

■ It is clear from the language of the Solicitation Act that the Act was designed and intended to confer exclusively upon the Attorney General of the State of Illinois the power and authority to regulate, control, and to enforce its regulations for the solicitation of funds for charitable purposes in Illinois. The Solicitation Act sets out an elaborate procedure for the Attorney General's performance of

these responsibilities and duties conferred upon him by the Act. The following synoptic review of the paragraphs and provisions of the Act establishes these principles.

The initial section 1 of the Solicitation Act defines charitable organizations, contribution, person, professional fund raiser, professional solicitation and charitable purpose. The initial section 1 is one of the few sections of the Solicitation Act which does not mention the Attorney General. Practically every other section of the Act which follows mentions and sets forth the Attorney General's duties and responsibilities.

Section 2 of the Act requires every charitable organization which solicits contributions in the State of Illinois, prior to such solicitation, to file a registered statement, on a form prescribed by the Attorney General, setting forth the names of the soliciting organization, the names and addresses of the organization's officers, when and where the organization was legally established and its tax-exempt status, the purpose of the organization and the solicitation, and other similar information. The registered statement must be signed by the organization's president or other authorized officer. Section 2 also requires the soliciting organization to maintain accurate books and records at the organization's principal office, subject to inspection by the Attorney General. Most importantly, subparagraph (h) of section 2 provides, "The Attorney General may make rules of procedure and regulations necessary for the administration of this Act" (Ill. Rev. Stat. 1985, ch. 23, par. 5102(h)).

It is provided in paragraph (a) of section 3 of the Act that upon the soliciting organization filing the registered statement required by section 2, and notice by the Attorney General of his determination that the organization's purposes are genuine, the Act is not to apply to such organization. The nine subparagraphs of paragraph b of section 3 name and identify those organizations which are exempted from registering with the Attorney General.

Written annual certified reports of the funds and of the soliciting organization, signed by the organization's chief executive officer, are required to be submitted to the Attorney General by section 4 of the Act, and the Attorney General is empowered to cancel the registration of any noncomplying organization.

Section 5 of the Act provides the means of service of process on an organization which solicits contributions in the State of Illinois, but which does not maintain an office within the State.

Section 6 of the Act prohibits fund raising within the State before registration with and on the form prescribed by the Attorney General,

or after the expiration or cancellation of such registration. The application for the registration is required to be in writing under oath, also on a form prescribed by the Attorney General. A bond to be approved by the Attorney General is required to accompany the organization's application for registration. Section 6 further requires that the bond shall run to the Attorney General "for the use of the State and to any person who may have a cause of action against the obligor of the bond for any malfeasance or misfeasance in the conduct of such solicitation." (Ill. Rev. Stat. 1985, ch. 23, par. 5106.) Section 6 significantly further provides, "Every professional fund raiser required to register pursuant to this act shall file an annual written report with the Attorney General containing such information as he may require by the rule," and that a violation of the provisions of section 6 is a Class A misdemeanor. Ill. Rev. Stat. 1985, ch. 23, par. 5106.

All contracts between professional fund raisers and charitable organizations are mandated by section 7 of the Act to be in writing and a copy thereof filed with the Attorney General and a copy kept in the office of the charitable organization. A violation of section 7 is also a Class A misdemeanor.

Section 8 prohibits a person from acting as a professional solicitor in the employ of a professional fund raiser unless requested, in writing, under oath on the form prescribed by and with the Attorney General, a violation of which is likewise a Class A misdemeanor.

Section 9(a) provides that "[a]n action for violation of this Act may be prosecuted by the Attorney General in the name of the People of the State, and in any such action, the Attorney General shall exercise all the powers and perform all the duties which the State's Attorney would otherwise be authorized to examine or perform therein." (Ill. Rev. Stat. 1985, ch. 23, par. 5109(a).) Paragraph (b) of section 6 decrees, "This Act shall not be construed to limit or restrict the exercise of the powers or the performance of the duties of the Attorney General which he otherwise is authorized to exercise or perform under any provision of law by statute or otherwise." (Ill. Rev. Stat. 1985, ch. 23, par. 5109(b).) It is required in paragraph (c) that whenever the Attorney General shall have reason to believe that any charitable organization, professional fund raiser, or professional solicitor is violating any provision of the Act, or there is employed or about to be employed in a solicitation for a charitable organization a scheme, or artifice to defraud, or for obtaining money or property by false pretenses, misrepresentation, or false statement, the Attorney General "may bring in the circuit court an action in the name, and on behalf of the People of the State of Illinois against such" organization or

person to enjoin such action and solicitation. "In connection with such proposed [injunction] action," section 9(c) further provides that "the Attorney General is authorized to take proof in the manner provided in section 2—1003 of the Code of Civil Procedure." Ill. Rev. Stat. 1985, ch. 23, par. 5109(c).

It is provided in section (d) of the Act (Ill. Rev. Stat. 1985, ch. 23, par. 5109(d)) that "[u]pon a showing by the Attorney General in an application for an injunction" any person, as an individual or as a member, officer or agent of a corporation that has been convicted of a felony or a misdemeanor which involves misuse of another's property or money, the Attorney General "may enjoin such persons from engaging in any solicitation or collection of funds for charitable purposes." Section 9(e) authorizes the Attorney General to exercise the injunction, etc., powers conferred by section 9 against any charitable organization or person exempted under section 3. The Attorney General is further entitled, under section 9(f), to recover costs for the use of the State in any action brought under the provisions of the Act.

Section 10 of the Act provides that when the Attorney General requires the attendance of any person in a proceeding for an injunction or in the Attorney General's investigation under section 9, the Attorney General need only order and give the person 14 days' notice of the time and place of such person's appearance and such order and notice "shall have the same force as a subpoena" and failure to comply is punishable by the court as contempt. (Ill. Rev. Stat. 1985, ch. 23, par. 5110.) Additionally, under section 10, the assistant Attorney General is authorized to conduct investigations, hearings and administer oaths in investigatory proceedings brought under section 9.

Section 11(a) prohibits a person from using the name of another person in soliciting contributions in this State. Specifically regarding the case at bar, section 11(d) provides that "[n]o charitable organization or professional fund raiser soliciting contributions shall use a name, symbol, or statement so closely related or similar to that used by another charitable organization or governmental agency that the use thereof would tend to confuse or mislead the public." (Ill. Rev. Stat. 1985, ch. 23, par. 5111(d).) A violation thereof is also a Class A misdemeanor.

Registration under the Act shall not be deemed an endorsement by the State of Illinois of the organization or of the fund raiser, as proclaimed in section 12, which also prohibits any organization from advertising that it has registered or complied with the Act, and the Attorney General is empowered to revoke the registration of any organization which violates the said advertisement prohibition.

The Attorney General is authorized under section 13 to enter into reciprocal agreements with other Attorney Generals of other States for the purpose of exchanging information.

Finally, section 4 is the severability clause of the Act. It provides that if any provision of the Act, or if the application of the Act to any person or organization or circumstances is held to be invalid, the remainder of the Act, or such other persons or bodies, shall not be affected thereby.

The foregoing abridged review of the Solicitation Act convincingly persuades that the legislature intended by the Act to confer the power to regulate charitable solicitations and to enforce the provisions of the Act in this State exclusively on the Attorney General. If the legislature had intended by section 9 of the Act to additionally confer the Act's enforcement powers on others, the legislature simply would have said so. Instead of stating, as provided in section 9, that "[a]n action for violation of the Act *may* be prosecuted by the Attorney General in the name of the People of the State" (emphasis added) (Ill. Rev. Stat. 1985, ch. 23, par. 5109), had the legislature desired to confer the Act's enforcement power additionally on others, the legislature rather simply could have and simply would have stated, "an action for violation of this act may be prosecuted by any person or organization," or such similar phraseology. The legislature did not so state and not having done so, the court is prohibited from expanding the legislative mandate to others besides the Attorney General.

■ The word *"may"* used in section 9(a) was not intended to convey that other parties were also empowered to bring an action for an alleged violation of the Act, but rather, the word *"may"* was used to simply allow the Attorney General to exercise his discretion, as he deemed appropriate, in enforcing the provisions of the Act on behalf of the People of the State of Illinois.

■ We further note, with emphatic persuasion, that every reported decision of every case brought under the Act was brought in the name of the Attorney General, on behalf of the People of the State of Illinois, and conversely, there is no reported decision of any case brought under the Act that was not brought in the name of the Attorney General, or that was brought by a party other than the Attorney General. A summary analytical review of these decisions and the applicable constitutional provisions leads to the inescapable conclusion that these decisions hold and the Illinois Constitution provides that an action brought in the interest and on behalf of the People of the State of Illinois, in which the People of the State of Illinois are the real party in interest, as in the case at bar, must be brought by

the Attorney General of the State of Illinois.

Article V, section 15, of the Illinois Constitution of 1970 simply provides:

> "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. 1970, art. V, §15.

The supreme court in *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 500, 359 N.E.2d 149, construed this constitutional provision and held, "[w]e [conclude] *** that the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional direction."

In *Briceland*, a provision of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq*.) authorized the Environmental Protection Agency to institute and prosecute enforcement proceedings before the Pollution Control Board. Pursuant thereto, Richard H. Briceland and Jeffrey R. Diver, Director and Deputy Director, respectively, of the Environmental Protection Agency, filed several enforcement complaints before the Pollution Control Board. The Attorney General then filed a complaint in the circuit court to enjoin Briceland, Diver, and the Environmental Protection Agency from proceeding in the action before the Pollution Control Board on the ground that because the People of the State of Illinois were the real party in interest in the proceeding, under article V, section 15, of the Illinois Constitution, the Attorney General was exclusively authorized to institute and prosecute such action on behalf of the State. The trial court agreed and held that the provisions of the Environmental Protection Act which authorized the Environmental Protection Agency to institute and prosecute proceedings for a violation of the Act before the Pollution Control Board violated the aforesaid constitutional provisions. The trial court in *Briceland* granted the Attorney General's motion for summary judgment and entered a permanent injunction restraining Briceland, Diver, and the Environmental Protection Agency from instituting or prosecuting enforcement actions before the Pollution Control Board.

On appeal in *Briceland*, the supreme court reviewed its pre-1970 decision of *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130, which held that under article 5, section 1, of the 1870 Illinois Constitution, the Attorney General was the sole officer empowered to represent the State and conduct litigation in any suit or proceeding in which the People of the State of Illinois were the real party in interest. The supreme court also reviewed the constitutional debate on article 5, sec-

tion 15, of the 1970 Constitution and concluded "that the delegates intended to retain the holding of *Fergus* that the Attorney General is 'the only officer empowered to represent the people in any suit or proceedings in which the State is the real party in interest ***.' " *Briceland*, 65 Ill. 2d at 499, quoting *Fergus*, 270 Ill. at 342.

In *Briceland*, the supreme court "conclude[d] that the Attorney General is the sole officer entitled to represent the interests of the State in litigation conducted before the Pollution Control Board," and held "that the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest," and "that section 4(e) [of the Environmental Protection Act] is unconstitutional to the extent that it authorizes the institution and prosecution of proceedings before the Pollution Control Board by an officer other than the Attorney General." (65 Ill. 2d at 500, 501-02.) These *Briceland* conclusions and holdings are clearly applicable to and controlling in the case at bar.

In *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665, it was the Attorney General who brought the action for injunctive relief to prohibit future solicitation by and an accounting from two charitable organizations, on the grounds of fraud, misrepresentations, violation of the provision of the Act regulating the solicitation of funds in Illinois for charitable purposes, deception of governmental agencies and unjust enrichment. The Attorney General's complaint also sought damages against the defendants. The court rejected the defendants' contentions of due process unconstitutionality for vagueness and an abridgement of first amendment constitutional freedoms of section 9 of the Act. Section 9 provides, as previously stated herein, that whenever the Attorney General shall have reason to believe that a charitable organization, fund raiser or solicitor is engaged in a devise, scheme, or artifice to defraud or is obtaining money by false pretense, in which less than 75% of the gross receipts are used for charitable purposes, and defines gross receipt as receipts after the deduction of certain "legitimate and reasonable cost," the Attorney General is authorized to bring in the circuit court "an action in the name, and on behalf of the people of the State of Illinois against such charitable organization and any other person *** to enjoin such charitable organization or other person from continuing such solicitation." (Ill. Rev. Stat. 1985, ch. 23, par. 5109(c).) The injunction was affirmed on review in *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 337-38, 376 N.E.2d 665, but the cause was remanded for the trial court's correct assessment of damages.

*People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665, returned before this court under *People ex rel. Scott v. Gorman* (1981), 96 Ill. App. 3d 289, 421 N.E.2d 228, and this court again reiterated the principle that section 9 of the Act sought "to prevent frauds on the public in the solicitation and use of charitable contributions. [Citation.] Bearing on this latter purpose, the Attorney General may seek redress when a noncharitable entity, or a charitable entity using funds for a noncharitable purpose, profits in an amount greater than 25% of the gross receipts of a contribution campaign." (96 Ill. App. 3d at 290.) The court again remanded the case to the trial court for the correct determination of the damages to be assessed against the defendants.

In *People ex rel. Fahner v. Community Hospital of Evanston* (1982), 108 Ill. App. 3d 1051, 1055, 440 N.E.2d 200, it was also "the Attorney General [who] filed a seven-count complaint against Community [Hospital of Evanston] alleging violations of 'An Act to regulate solicitation and collection of funds for charitable purposes ***' (Ill. Rev. Stat. 1979, ch. 23, par. 5101 *et seq.*) *** as well as fraud, *ultra vires*, self-dealing and conversion. The complaint sought an accounting, the appointment of a receiver, liquidation of Community's assets, dissolution of the corporation, and injunctive and other relief." This court held that *"the right of the State acting through the Attorney General to interfere in the handling of public charitable use to prevent or correct abuses cannot be denied."* (Emphasis added.) 108 Ill. App. 3d at 1058.

In *People ex rel. Hartigan v. National Anti-Drug Coalition* (1984), 124 Ill. App. 3d 269, 464 N.E.2d 690, this court again had before it an appeal from "an action filed by the Attorney General of Illinois seeking injunctive relief and an accounting from *** National Anti-Drug Coalition, of an organization which solicited donations in Illinois but failed to register with the Attorney General as a charitable organization." The trial court granted injunctive relief and other relief against the defendants. In affirming, this court held:

> "We further note that our supreme court has determined that pursuant to article V, section 15 of the Illinois Constitution, the Attorney General is the sole officer who is authorized to represent the people of the State of Illinois in *any* litigation in which the people are the real party in interest, absent a contrary constitutional directive. (*People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149.) In the *Briceland* decision, the court explained that section 15 added to the language of the prior (1870) constitutional provision which had created the of-

fice of Attorney General and had provided only that he 'shall perform such duties·as may be prescribed by law.' (Ill. Const. 1870, art. V, sec. 1.) The court further noted that in *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130, the court held that the 1870 constitution granted the Attorney General *all the powers associated with that office at common law* and that while the legislature could add to these powers, it could not reduce the Attorney General's common law authority. *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 492-93.

In our opinion, therefore, it is evident that both the Illinois Constitution and the supreme court have recognized the common law authority of the Attorney General to protect the rights of the people of Illinois. This responsibility includes the duty to protect, supervise and enforce charitable trusts. (See G. Bogert, Trusts & Trustees sec. 411 (2d ed. 1977).) We thus conclude that because the Attorney General properly initiated this action pursuant to its statutory as well as its constitutionally prescribed authority, the trial court's decision in this matter will be upheld." (Emphasis in original.) 124 Ill. App. 3d at 275-76.

This court additionally noted in *National Anti-Drug Coalition* (124 Ill. App. 3d at 275 n.3):

"Indeed, the right of the State acting through the Attorney General to interfere in the handling of a public charity to prevent or correct abuses cannot be denied."

The foregoing clearly abrogates any doubt or question that only the Attorney General is authorized to bring an action under the Act on behalf of the People, the real party in interest, for a violation of the Act.

Plaintiff, the City of Evanston, conversely urges *People ex rel. Brown v. State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524, a pre-*Briceland* decision, and an action brought by the People of the State of Illinois through the relation of Herbert Brown, the Director of the Illinois Department of Law Enforcement, and not through the relation of the Attorney General of the State of Illinois, as authority for the City of Evanston bringing the instant action. *Brown* is no authoritative solace to the City of Evanston, for in *Brown* the court aptly noted:

"Although technically not in conformity with the language of the statute, the real Plaintiff is the People of the State of Illinois and the suit was brought in the name of the people. *The Attorney General was of record as representing the People of*

*the State of Illinois* through the relation of Herbert Brown. It would seem of little use to dismiss the complaint on this basis for such action would only create further litigation and would serve no useful purpose." (Emphasis added.) 7 Ill. App. 3d at 105.

The People of the State of Illinois, the Attorney General and certainly the charitable organizations, fund raisers and solicitors are entitled to conclusively assume that upon the organization's, *et al.'s*, compliance with the Attorney General's regulations promulgated under the Act and upon the organization's, *et al.'s*, conformity to the provisions of the Act itself, as determined by the Attorney General, they would not then be additionally subjected to possible multiple suits brought by other interested disgruntled parties, alleging violations of the provision of the Act or the Attorney General's regulation, after the Attorney General had deemed and decreed appropriate obedience. Indeed this would be a catastrophic result.

■ For the foregoing stated reasons, we hold that under the Act and the Illinois Constitution, the Attorney General of the State of Illinois was exclusively empowered to bring this injunctive action on behalf of the People of the State of Illinois, the real party in interest, for an alleged violation of the Act. The City of Evanston was not authorized and had no standing to institute the instant action, and the trial court erred in denying the defendants' motion to dismiss the City of Evanston's complaint.

■ We further hold that there was no evidence that the Evanston Fire Fighters Association's solicitation campaign violated section 11(d) of the Act, as plaintiff's complaint alleged, and the trial court therefore erred in enjoining the Association's solicitation campaign.

Section 11(d) of the Act provides:

"No charitable organization or professional fundraiser soliciting contributions shall use a name, symbol, or statement so closely related or similar to that used by another charitable organization or governmental agency that the use thereof would tend to confuse or mislead the public." Ill. Rev. Stat. 1985, ch. 23, par. 5111(d).

The trial court, in the total absence of even a scintilla of evidence that the Association's use of (1) its letterhead; or (2) the name "Evanston Fire Fighters Association"; or (3) the Association's logo, the Maltese Cross at the top of the Association's letterhead, in the Association's solicitation campaign, violated section 11(d) of the Act. There was no evidence presented that the Association's use tended to confuse or mislead the public into believing that the City of Evanston

was connected with the Association's solicitation campaign. Not one bit of evidence was presented to the trial court in support of this proposition. In fact, only evidence contrary to this proposition was presented to the trial court.

At the evidentiary hearing of the complaint for the injunction, the City of Evanston called only Joel Asprooth, the city manager of the City of Evanston, and Sanders Hicks, the fire chief of the City of Evanston fire department. A reading of their brief testimony reveals that neither uttered a word of testimony that the foregoing letter and/or logo tended to confuse or mislead the public into believing that the City of Evanston was connected with the Association's solicitation efforts, even though paragraphs 6 through 12, inclusive, of the City of Evanston's complaint abundantly and clearly so alleged. But allegations without proof are useless, and allegations are not proof.

The only evidence presented to the trial court was presented by and on behalf of the Association in opposition to the proposition that its letterhead and Maltese cross logo did not tend to mislead or confuse the public into believing that the City of Evanston was connected with the Association's solicitation campaign.

The Association's original solicitation letter, admitted into evidence, was as follows:

"[The Maltese
Cross Emblem
    and
Inscription]
    EVANSTON FIRE FIGHTERS ASSOCIATION
    Local 742
    INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS
    P.O. BOX 1043
    EVANSTON, ILLINOIS 60204

To Our Business Friends and Neighbors:

    This letter will introduce Ron Kaufman, an official representative of the Evanston Fire Fighter Association. Mr. Kaufman is receiving advertisement orders in support of our first annual community awareness magazine.

    As a professional business person, you will also gain from this publication as it will be distributed to the homeowners of our city. This home delivery will provide an opportunity for our business friends to obtain true value for our [sic] advertising dollar.

    Our Evanston Fire Fighters Association is conducting this

drive in order for us to continue our involvement in several community service projects. We pride ourselves in our efforts and want to continue to give the best we possibly can to our community.

YOUR GENERAL SUPPORT WILL ENABLE US TO INITIATE A SMOKE DETECTOR PROGRAM. OUR GOAL IS TO PROVIDE HIGH QUALITY, LOW-COST SMOKE DETECTORS TO EVERY LIVING SPACE IN EVANSTON. THE CITY FOR WHICH WE HAVE DEDICATED OUR LIVES TO DESERVES SUCH A COMMUNITY PRO-GRAM.

> Respectfully
> Blair Haltom

Please make checks payable to: Evanston Fire Fighters Assoc."

After Haltom's conference with Fire Chief Hicks, *et al.*, the Association changed its solicitation letter to the following:

"[The Maltese
Cross Emblem
    and
Inscription]

EVANSTON FIRE FIGHTERS ASSOCIATION
LOCAL 742
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS
P.O. Box 1043
EVANSTON, ILLINOIS 60204

To Our Business Friends and Neighbors

This letter will introduce Mr. Ron Kaufman, an official representative of the Evanston Fire Fighters Association. Ron Kaufman is receiving sponsorships for our first annual community awareness magazine.

The Association is composed of all firefighters of the department and exists to promote the safety, benefits and other interests of the firefighters. We pride ourselves in our efforts to be involved in community service projects and want to continue to give the best we can to our community. The Association is neither sanctioned nor supported by the City of Evanston or the Evanston Fire Department. It is the Association, not the City or Department, which is promoting this magazine to raise funds for the purpose of obtaining smoke detectors to help save lives.

Your generous support will enable the Association to initiate this smoke detector program. Our goal is to provide high quality, low-cost smoke detectors to every living space in the community. The City which we have dedicated our lives to deserves such a program.

Respectfully,
Blair Haltom,
President

Please make checks payable to: Evanston Fire Fighters Association."

The Association's full name as it had been used since 1942 and as it was prominently displayed on the solicitation introductory letter was "EVANSTON FIRE FIGHTERS ASSOCIATION, LOCAL 742, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS." The plaintiff's full name is merely CITY OF EVANSTON. Therefore, the names of the involved parties share only one common element, the word "Evanston." It would appear that the language of section 11(d) requires that the names of the involved parties be considered in their entirety, rather than confined to one common element.

Since the name "City of Evanston" and the name "Evanston Fire Fighters Association, Local 742, International Association of Fire Fighters" are considered in their entirety, it is abundantly clear that the two names are not so closely related or similar that it can or must be concluded as a matter of law that use of the latter name confuses or misleads the public into believing that the former is involved with the latter's solicitation endeavors.

At the evidentiary hearing the defendants presented uncontroverted evidence that many local organizations and companies use the word "Evanston" in their names. Defendants offered the Ameritech Bell Phone Book of the Evanston area as an exhibit, admitted as an offer of proof over plaintiff's objection, which reveals that there are in excess of 100 businesses, organizations or associations in the Evanston area which use the word "Evanston" in their names and yet unquestionably are not related to the City of Evanston.

In addition, Mr. Joel Asprooth, Evanston's city manager, also testified regarding the use of the word "Evanston" in the United Way's charitable solicitation efforts in the City of Evanston. The City issued a letter to all city employees asking for a contribution to the Evanston United Way. The United Way also issued a pamphlet which used the name Evanston United Way. The Evanston United Way Pamphlet listed six organizations which used the word "Evanston" in their names and for which funds were solicited. Neither the United Way

nor any of the organizations listed in the Evanston United Way Pamphlet, however, were considered to be a department of the City of Evanston.

The Association contends that because many organizations and businesses use the word "Evanston" in their names, the public does not automatically assume that an organization which uses the word "Evanston" is associated with the City or one of its departments. The Association also insists that the word "Evanston" is merely a geographical description rather than automatically a City governmental entity. Ironically, these arguments are the same ones urged by the City of Evanston in attempting to justifiably explain and excuse United Way's use of the word "Evanston" in its solicitation crusades.

The Association further urges that, in order to determine whether the Association violated section 11(d) of the Act, the court must also examine more than merely the allegedly similar names and logos, and that the court must also examine the manner in which the solicitation campaign was conducted.

An examination of the evidence presented by the Association on its solicitation campaign reveals that the Evanston Fire Fighters Association had been in existence for over 100 years, had been chartered with the International Association of Fire Fighters and had maintained its present names and logo for 45 years, had bargained with the city over wages, hours and terms and conditions of employment for over 30 years, and had a written collective bargaining agreement with the City of Evanston for 15 years. Haltom also testified that the Association had engaged over an extended period in activities within the community, such as providing Thanksgiving dinners and Christmas toy collections for the needy.

The evidence additionally established that Haltom and the Association took substantial steps to ensure that there was no misleading or confusion regarding the identity of the Association and whom it represented. These steps included distributing an introductory letter by the solicitor on stationery which the Association had used for many years. This introductory letter was modified on two separate occasions to further particularly describe the Association and to specifically disclaim any sponsorship or sanction by the City of Evanston or the Evanston fire department. The Association also distributed a letter, also on Association stationery, which listed a number of groups that operated in the City and which had misrepresented themselves in past solicitations. The Association's solicitors were also given explicit instructions that they were not to connect the Association with the City of Evanston or the Evanston fire department in any manner. Fi-

nally, the Association's solicitors were instructed to distribute Haltom's home telephone number in the event there were any questions regarding the Association's solicitation.

The trial court decreed that solicitation of funds by the defendants utilizing the logo of the Evanston Fire Fighters Association violated section 11(d) of the Act, and the trial court enjoined the use of said logo by the Association in soliciting funds. Here again, there was no evidence presented that the use of the Association's logo tended to mislead or confuse the public into believing that the City of Evanston was connected with the Association's solicitation. We do not and indeed we cannot conclude as a matter of law, as the trial court erroneously did, that the use of the Association's logo tended to so mislead or confuse the public.

The Association convincingly urges before us that the uncontested evidence presented at the evidentiary hearing established that the Association's logo was not similar to the City of Evanston logo and, besides, the logo is an international emblem which symbolizes the fire fighting service, and it is not a symbol exclusive to the City of Evanston. The Association concludes that the use of its logo in soliciting funds did not therefore tend to mislead or confuse the public into believing that the City of Evanston was connected with the Association's solicitation campaign.

The uncontroverted evidence established that the Association's logo is a Maltese cross with the phrase "Evanston Fire Fighters Association" on the upper and lower arms, the phrases "Saving Lives" and "Protecting Property" are on an inner circle, and the phrase "Since 1872" is in the center of the logo. The logo is a registered trademark of the International Association of Fire Fighters. The Association adopted the logo in 1942 when it became chartered as Local 742 by the International Association of Fire Fighters. The City's logo is also a Maltese cross but contains only the words "Evanston Fire Department." Although the respective logos have the same general shape, they are not so closely related or similar that it can be unequivocally concluded as a matter of law that the Association's logo tended to confuse or mislead the public, violative of the provision of section 11(d) of the Act.

Given the Association's extended previous relationship with the community, its long history of existence and use of its name and logo, and the substantial steps which the Association made to ensure that the public was correctly informed of the identity and purpose of the Association, it is clear that the public would not be confused or misled by the Association's solicitation campaign, as a matter of law,

as the trial court fallaciously concluded and "Evanston Fire Fighters Association, Local 742, International Association of Fire Fighters," and the Association's Maltese cross logo and the inscriptions thereon, "Evanston Fire Fighters Association, Saving Lives and Protecting Property, Since 1872," do not automatically and conclusively imply, mislead or confuse the public into believing that the City of Evanston is connected with the Association's solicitation. Instead they could lead one to believe that only the labor organization, *i.e.*, the Association, was engaged in the solicitation.

The trial court erroneously based its decision, that the Association's use of its names and logo tended to confuse and mislead the public and violated section 11(d) of the Act, on *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 286 N.E.2d 524. *Brown* is inapplicable to and is not controlling in the case at bar.

First, we again note that *Brown* was decided before the supreme court's decision of *Briceland*.

Second, we further note in *Brown*, an action to enjoin the defendant from using the name "Illinois State Trooper" in its solicitation and to enjoin the violation of various Illinois Department of Law Enforcement rules, that the complaint further alleged that the Department of Law Enforcement had internal regulations issued pursuant to its statutory authority which prohibited police personnel from collecting money from citizens for any purpose and from collecting contributions by any means, and the complaint further alleged that the purpose of the creation of the lodge was the avoidance of these rules and that the solicitation was just a sham and a device for the purpose of evading the proscription against solicitation. There were no such allegations in the complaint in the case at bar. Indeed, in view of the uncontested evidence of the Association's long history of existence and community service, such an allegation in the instant complaint would have been utterly fallacious and frivolous.

Third, it was the use of "Illinois State Trooper" of which the complaint was made in *Brown*, whereas, unlike in the instant case, it was the use of "Evanston Fire Fighters Association" of which the complaint was made.

Fourth, in *Brown*, unlike in the instant case, the trial court heard and received no evidence. In *Brown* the trial court, without an evidentiary hearing, dismissed the complaint from which the Attorney General appealed. Thus, the court of review in *Brown* had no evidence before it upon which to predicate a factual determination or decision. The *Brown* court of review aptly observed that "the statutory lan-

guage [of section 11(d) of the Act] prohibits solicitation in a name 'so closely related or similar' to a governmental agency that it would tend to confuse the public." (*Brown*, 7 Ill. App. 3d at 104.) The *Brown* court then concluded, without any evidentiary support whatever, and apparently wholly from new gossamer cloth unused in the trial court, that "when the term 'Illinois State Trooper' is used, it conjures up only one image, that of Illinois State Highway Police. That being so, solicitation in using the phrase 'Illinois State Trooper' can only cause confusion and create the impression that a State agency or department is in some manner connected with this solicitation." (7 Ill. App. 3d at 104.) Manifestly, the *Brown* court came to its foregoing conclusions as a matter of law. We are unwilling to similarly conclude, particularly contrary to the unrebutted converse evidence, in the case at bar. *Brown* was no valid authority for the trial court's injunction order in the instant case and the trial court erred in holding otherwise.

Next, the defendant Evanston Fire Fighters Association and the defendant Blair Haltom, the Association's president, assert that the trial court lacked jurisdiction in the instant action under the Act to determine whether the defendants were in violation of the rules and regulations governing the Evanston fire department. This assertion is based on the fact that there is an adequate remedy at law with which the City of Evanston and the Evanston fire department may enforce its rules against its employees. This enforcement occurred when, the defendants contend, the City suspended Haltom for 30 calendar days. When faced with this suspension, Haltom had several avenues with which to appeal the suspension. Haltom could have (1) filed a grievance pursuant to the collective bargaining agreement between the City of Evanston and the Association, (2) filed an appeal with the Evanston civil service commission, or (3) filed an unfair labor practice charge with the Illinois Public Labor Relations Board. The defendants maintain that Haltom and the Association elected to file an unfair labor practice charge with the Illinois Public Relations Board. A complaint was issued on December 30, 1986, and a hearing thereon was held.

The defendants further contend that effective January 1, 1986, the Illinois Public Labor Relations Act and all of the rights afforded public sector employees therein were applied to fire fighters. (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*) The Illinois Public Labor Relations Act was designed to regulate the labor relations between employers, fire fighters, and fire fighter labor organizations. As part of its regulatory powers, the Illinois Public Labor Relations Board

was granted the authority to determine what constituted an infringement on an employee's or labor organization's rights. In its unfair labor practice charge, the defendants contended that a blanket prohibition of all fund raising efforts by a labor organization was contrary to the Illinois Labor Relations Act. Defendants, therefore, assert that the trial court did not acquire jurisdiction under any provision of the Solicitation Act to determine whether a violation of the Evanston fire department's rules and regulations occurred, and given the plaintiff's adequate remedy at law under the provisions of the Illinois Public Labor Relations Act, the trial court lacked jurisdiction to determine whether defendants violated the Evanston fire department rules and regulations. We agree with these assertions by the defendants.

■■■ We additionally conclude that the evidence adduced at the injunction hearing failed to establish that the defendant Blair Haltom violated Rule 5, paragraphs 17 and 18, of the Evanston fire department and that the trial court erroneously so found. Paragraph 17 of Rule 5 states:

"Soliciting of Gifts, Gratuities, Fees, Rewards, etc.

Firefighter and employees shall not under any circumstances solicit any gift, gratuity, fee or any other thing of value, where there is any direct or indirect connection between the solicitors and their departmental membership or employment."

There is no evidence whatsoever in the record before us that defendant Haltom solicited any gift, gratuity, fee or any other thing of value, and the trial court finding that Haltom violated paragraph 17 by doing so is evidentially baseless and therefore void.

Rule 5, paragraph 18, provides:

"Acceptance of Gifts, Gratuities, Fees, etc. Firefighters and employees shall not accept either directly or indirectly any gift, gratuity, fee or any other thing of value arising from or offered because of fire department employment or any activity connected with said employment. Firefighters and employees shall not accept any gift, gratuity, fee, or any other thing of value, acceptance of which might tend to influence directly or indirectly the action of said member or employee in any matter of fire department business, or which might tend to cause an adverse reflection on the Department or any firefighter or employee thereof. No firefighter or employee of the Department shall receive any gratuity from other firefighters or employees without the express permission of the Firechief."

Again, there is no evidence in the record before us that defendant

Haltom directly or indirectly accepted any gift, gratuity, fee or any other thing of value, and again, the trial court's finding that Haltom violated paragraph 18 by doing so is evidentially baseless and therefore void.

Defendant Haltom's final contention is that the trial court erred in dismissing his counterclaim, the pertinent allegations of which were that Haltom was suspended by Chief Hicks from October 22 to December 1, 1986, for allegedly violating section 11(d) of the Act and Rule 5, paragraphs 17 and 18, of the rules and regulations of the Evanston fire department and that he lost wages for the suspension period. Haltom's counterclaim denied that he committed said violations and asserted that the trial court lacked jurisdiction to declare that he had violated said rules. Haltom additionally stated in his counteraction that his suspension was unlawful and prayed full back pay and benefits, and that any reference to his suspension be expunged from his personnel file.

As previously stated herein, there was no evidence presented to the trial court which established that Haltom, or the Association, violated section 11(d) of the Act or paragraphs 17 and 18 of Rule 5 of the Evanston fire department rules and regulations. Haltom's suspension was therefore unlawful, and the trial court therefore erred in dismissing his counterclaim.

For the reasons stated, the judgment of the trial court "in favor of Plaintiff and against the Defendants" and dismissal of the defendant Haltom's counterclaim are reversed and the cause is remanded to the trial court with directions to dismiss plaintiff's, the City of Evanston's, complaint and reinstate defendant Haltom's counterclaim and enter judgment thereon as prayed in favor of counterplaintiff Haltom and against the counterdefendant.

Reversed and remanded with directions.

LORENZ and COCCIA, JJ., concur.