No. 3-00-0101

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, )    of the 10
th
 Judicial Circuit

) Peoria County, Illinois

Plaintiff-Appellee, )

) 

    v. ) No. 98–CF–1124

)

JOHN KNIPPENBERG, ) Honorable 

) Donald C. Courson,

Defendant-Appellant. ) Judge Presiding

________________________________________________________________

JUSTICE SLATER delivered the opinion of the court: ________________________________________________________________

After a jury trial, the defendant, John Knippenberg, was convicted of six counts of theft (720 ILCS 5/16(a)(2)(a) (West 1998)), dispersing charitable trust funds without authority and for his personal benefit (225 ILCS 460/19 (West 1998), and failure to register as a professional fund raiser (225 ILCS 460/6(a) (West 1998)).  He was sentenced to a six-year term of imprisonment for one count of theft and six years for failing to register as a professional fund raiser.  Those two sentences were to be served consecutively to each other and concurrent to a 12-year term of imprisonment for his conviction for personal use of charitable trust funds.  He was sentenced to concurrent six-year terms of imprisonment for the remaining counts of theft.  On appeal, the defendant argues: (1) the prosecution, conviction, and sentencing for each of the offenses he was convicted of are void and erroneous; (2) he was unconstitutionally sentenced to consecutive terms of imprisonment; and (3) he was denied the effective assistance of counsel.  For the following reasons, we affirm. 

The defendant did not appear for trial and was tried 
in
 
absentia
.
  At trial it was established that the defendant once worked for the Veterans Assistance Corporation (VAC), a fund raising division of the Veterans of Foreign Wars.  He became the office manager in June 1997.  When he became manager, he hired the people who had been working for the previous manger.  He ran offices in a three state area raising money by telephone solicitation.  The defendant’s employees testified that they would call each person on their telephone list four times a year to solicit funds for the Veterans of Foreign Wars.  One employee explained that after someone agreed to donate over the telephone, she would go to that person’s house to collect the funds and then take the cash or check and give it to the defendant.

In September 1998 the defendant had a disagreement with his employer at the VAC and he left.  He kept his employees, however, and told them that they were no longer associated with the VAC.  He told them that he had an agreement with the local Garden Street Post of the Veterans of Foreign Wars to act as a fund raising office for the post.  He talked about opening up a home for veterans and said that a certain percent of the money raised would go to the Garden Street post and a portion would go to open a home for veterans.   

Melvin Jones, Sr., testified that he was a member of the Garden Street Post of the Veterans of Foreign Wars.  From September 1998 to December 1998 Jones was the person who recorded the minutes of the post’s meetings.  He had never heard of the defendant, nor had the post ever given him permission to solicit funds on its behalf.  He had also never heard of the Veterans Families Welfare.  The defendant never gave the Garden Street Post any funds.

Detective Meg Barnofsky testified that she interviewed the defendant on December 10, 1998, after she executed a search warrant for the defendant’s office.  The defendant told her that after he left the VAC, he met Chase Ingersoll, who told him that he could open up his organization using 610 West Richmond and be housed under the division of Reach Ministries.  An agreement was made and the defendant signed a lease for that location for $600 a month rent.  The defendant also allegedly agreed to lease the second floor of 602 West Richmond to open a living center for homeless veterans and their families.  As part of the agreement, the defendant was to pay 10 percent of all funds donated to Reach Ministries.

Barnofsky reviewed the ledgers found in the defendant’s office.  Payroll information was documented in the ledgers.  The defendant was paid $1,231.25 for the first 25 days of October 1998 and $1,145.99 for the last five days of October and the month of November 1998.

Kirk Kimmel testified that in October 1998 the defendant told him that he had incorporated as Veterans Family Welfare, that it was a viable business, and that they could “play off” the initials “VFW.”  Tina Jeremiah, one of the defendant’s employees, testified that he told her in October 1998 that she was working for the Veterans Families Welfare and that she had new solicitation tickets printed up with that name.

Patricia Ford, a telephone solicitor, testified that around November of 1998 the defendant told her that he could not raise funds for a local Veterans of Foreign Wars, so the solicitors were no longer to use that name.  After that, they used the letters “VFW” and did not say Veterans of Foreign Wars.  If anyone asked if whether they were the Veterans of Foreign Wars, Ford told them that they were not.  If a prospective donor asked  what “VFW” stood for, she would explain that she was calling for a donation to the Veterans Families Welfare.  Ford said that the solicitors made the same presentation over and over.  They had a list of past donors, called a tap sheet.  They would begin the presentation by saying, “thank you for your past support of veterans and we’re back in the area having another drive,” and asking the prospective donor if he would be interested in helping again.  They did not change anything in the solicitation unless someone asked who they were.  The tap sheets were essentially receipts from old donations that came from the office that the defendant had opened up for the VAC.  When he left the VAC and moved to Richmond street, he took all the tap sheets which belonged to the VAC.

Cindy McKeown testified that she had given to the Veterans of Foreign Wars about a dozen times over the years.  She knew the organization as the VFW.  When she heard VFW she thought of Veterans of Foreign Wars.  In December 1998 she received a telephone call from man who said he was from the VFW.  She believed that to mean he was with the Veterans of Foreign Wars.  He explained that the purpose for soliciting funds was for holiday food baskets.  She agreed to make a donation and wrote a check for $15 to the VFW.  A woman came to her home to collect the check but did not give her a receipt.  The check cleared her account.  Numerous other individuals testified to similar facts.  Generally, they had all donated money to the Veterans of Foreign Wars in the past, someone had telephoned them and identified themself as from the VFW, and thanked them for donating in the past.  All the donors testified that they believed their money was going to the Veterans of Foreign Wars, not the Veterans Families Welfare.  

Linda Young, a branch manager of the Citizens Equity Federal Credit Union (CEFCU), testified that she had seen the defendant at CEFCU many times from September through December 1998.  He came in to the credit union to deposit a volume of checks, many of which were payable to the VFW. 

Thomas Hafele, a loss prevention investigator for CEFCU, testified that he compiled CEFCU’s records pertaining to the defendant.  He reviewed the account statements, deposits, checks and withdrawals for the period September 21, 1998 through January 4, 1999.  One deposited item was made payable to Veterans of Foreign Wars and all the others were made to the VFW.  None were made to Veterans Families Welfare.  On the back of many of the checks was stamped “VFW” and the account number.  For the period from September 21, 1998, through January 4, 1999, the total amount of deposits was $34,691.20, and the total amount of withdrawals was $35,139.83.

After he was arrested, the defendant was released on a $75,000 bond.  However, he later failed to appear for a scheduling conference and a warrant was issued for his arrest.  The defendant was tried 
in
 
absentia
.  The defendant appeared in court after the trial was concluded.  Defense counsel moved to withdraw and the public defender was appointed to represent him.  At the sentencing hearing, the trial court noted that the offenses were aggravated by the defendant’s past criminal history, which included 30 or more burglaries dating back to 1962.  The court then sentenced the defendant.

On appeal, the defendant first argues that the prosecution,  conviction and sentence for disbursing charitable trust funds without authority and for personal benefit (225 ILCS 460/19 (West 1998)) is void for two reasons:  (1) the state’s attorney lacked standing to prosecute the offense; and (2) the evidence was insufficient to prove that he committed the charged offense.

I.  Authority of State's Attorney to Prosecute

Section 9(a) of the Solicitation for Charity Act (Act) provides as follows:

“An action for violation of this Act 
may
 be prosecuted by the Attorney General in the name of the people of the State, and in any such action, the Attorney General shall exercise all the powers and perform all the duties which the State’s Attorney would otherwise be authorized to exercise or to perform therein.”  (Emphasis added.)  225 ILCS 460/9(a) (West 1998).

The Attorney General has exclusive authority to initiate and prosecute cases only when a statute so provides.  
People v. Buffalo Confectionary Co.
, 78 Ill. 2d 447, 401 N.E.2d 546 (1980).  A court may not alter the plain meaning of a statute by reading into it any limitations that do not exist.  
People v. Cochran
, 167 Ill. App. 3d 830, 522 N.E.2d 261 (1988). 

The defendant cites to 
City of Evanston v. Evanston Fire Fighters Association
, 189 Ill. App. 3d 233, 545 N.E.2d 252 (1989) to support his position that the state’s attorney did not have the power to prosecute him for this offense.  In that case, the court held that the Attorney General was exclusively empowered to bring 
injunctive
 action on behalf of the State for an alleged violation of the Solicitation for Charity Act.  
City of Evanston v. Evanston Fire Fighters Association
, 189 Ill. App. 3d at 249, 545 N.E.2d at 262.  The holding of that case pertained to injunctive relief only.  Any other language in the case referring to the authority of the Attorney General versus the state’s attorney to prosecute charges under the Act is dicta.  Moreover, nothing in the plain language of the statute indicates an intent to change the concurrent power of the Attorney General and the state’s attorney to prosecute criminal violations under the Act.  The Act simply states that if the Attorney General chooses to prosecute an individual for violation of the Act then the Attorney General has the power to perform all the duties which the state’s attorney would normally have.  The Attorney General did not elect to prosecute this case, and the state’s attorney had the power to prosecute the defendant under the Act.

II.  Sufficiency of the Evidence

The defendant argues that the evidence was insufficient to establish that he committed this offense.  In order to prove that he disbursed charitable funds without authority and for his personal benefit (225 ILCS 460/19 (West 1998)) the State needed to prove that the defendant: (1)  was a trustee or person; (2) that without lawful authority he intentionally dispersed or caused the use of the charitable trust funds over which he was a fiduciary to be used for his personal benefit; and (3) that those funds amounted to more than $1,000 in a three-year period.  225 ILCS 460/19 (West 1998).  When presented with a challenge to the sufficiency of the evidence, the relevant question on appeal is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).   

There was sufficient evidence to prove the defendant guilty of this offense beyond a reasonable doubt.  When the defendant left the VAC and opened up his own operation, he took the tap sheets which contained the names and telephone numbers of individuals who had previously donated money to the Veterans of Foreign Wars.  He told one of his employees that it was good business to play off the initials “VFW.”  Initially he told his employees that they were soliciting funds for the Garden Street VFW Post.  The defendant never turned over charitable contributions to that post.  Later he told his employees that he had formed “Veterans Families Welfare.”  After the Veterans of Foreign Wars told him to cease and desist using “VFW” in his solicitations, he continued to tell donors that they were being solicited on behalf of the 
“VFW.”  The defendant set up a checking account at a credit union in September 1998.  In total, $34,691.20 was deposited from September 21, 1998 until January 4, 1999.  During that period, $35,139.93 was withdrawn. None of it was ever disbursed to a charity.  Instead, large amounts, in excess of $1,000, were withdrawn by the defendant. Reviewing this evidence in the light most favorable to the prosecution, it amply supports the jury’s conclusion that the defendant withdrew the profits and used them for his own personal benefit.

III.  Failure to Register as a Professional Fundraiser

The defendant argues that the prosecution, conviction, and sentence for failure to register as a professional fund raiser (225 ILCS 460/6(a) (West 1998)) is void and erroneous for three reasons: (1) the state’s attorney did not have standing to prosecute the offense; (2) the evidence was insufficient to establish the commission of the offense; and (3) his consecutive sentences were unconstitutional.

We have already determined that the state’s attorney had standing to prosecute the offenses under the Solicitation for Charity Act (225 ILCS 460/9(a) (West 1998)).  Therefore, we will not revisit this issue.

The defendant argues that the State did not prove that he was a professional fund raiser because the State: (1) presented no evidence that he was compensated for managing the solicitation drive or campaign; and (2) failed to establish that his salary was computed on a percentage basis as required under the Act.  225 ILCS 460/1(d) (West 1998).  The Act defines a professional fund raiser as follows:

“Any person who for compensation or other consideration, conducts, manages, or carries on any solicitation drive or campaign in this State *** for the purpose of soliciting contributions for or on behalf of any charitable organization or any other person, or who engages in the business of, or holds himself out to persons in this State as independently engaged in the business of soliciting contributions for such purposes.  A bona fide director, officer, employee or unpaid volunteer of a charitable organization shall not be deemed a professional fund raiser unless the person is in a management position and the majority of the individual’s salary or other compensation is computed on a percentage basis of funds to be raised, or actually raised.”  225 ILCS 460/1(d) (West 1998).

First, the State presented sufficient evidence that the defendant was compensated for managing his operation.  The State introduced evidence from the ledgers that the defendant was paid $1,231.25 for the first 25 days of October and $1,145.99 for the last five days of October and the month of November.  None of this money was given to charity and it was not accounted for.  As the trial judge noted, a rational jury could have concluded that the defendant took it all.  Second, we reject the defendant’s contention that the State failed to prove that his salary was computed on a percentage basis as required under the Act.  We agree with the trial court that the defendant took everything that was left after paying expenses.  None of this money went to charity.  It is a fair inference from the record that all the profits went to the defendant.

IV.  Sentence

The defendant also argues that he was unconstitutionally sentenced to a consecutive sentence for this offense.  He claims that a consecutive sentence was not available in this case because section 5/5–8–4(b) of the Code of Corrections permitting such sentences is unconstitutional under the recent case of 
Apprendi v. New Jersey
, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); 730 ILCS 5/5–8–4(b) (West 1998).  The defendant contends that 
Apprendi
 requires that any fact that increases the penalty for an offense beyond the statutory maximum must be submitted to the trier of fact and proven beyond a reasonable doubt.  Therefore, he claims that the statutory section in question denied him due process because the jury did not find the defendant’s crimes were part of a single course of conduct.  

Our supreme court has recently addressed this issue in  
People v. Wagener
, 196 Ill. 2d 269, ___ N.E.2d ___ (2001).  In 
Wagener
, the court held that 
Apprendi
 concerns are not triggered by consecutive sentencing.  It explained that 
Apprendi
 only concerned facts which increased the maximum penalty for a crime.  
Wagener
, 196 Ill. 2d at ___, ____ N.E.2d at ___.  
Wagener
 noted that, in Illinois, consecutive sentences remain discrete sentences and none of the penalties for any individual crime is increased when a defendant receives a consecutive sentence.  
Wagener
, 196 Ill. 2d at ___, ____ N.E.2d at ___.  Therefore, we find that the defendant was not unconstitutionally sentenced to consecutive sentences.  

V.  Prosecutorial Discretion

The defendant argues that he was improperly prosecuted and convicted of six counts of theft by deception.  720 ILCS 5/16–1(a)(2)(A) (West 1998).  Those offenses were charged as Class 4 felonies because of the defendant’s prior convictions.  720 ILCS 5/16–1(b)(2).  Instead, he claims that he should have been charged with a criminal provision of the Solicitation for Charity Act.  See 225 ILCS 460/11(d) (West 1998).  A violation of that offense is a Class A misdemeanor.  225 ILCS 460/11(e) (West 1998).  

A prosecutor has the authority to choose among potential crimes with overlapping penalties and different sentences.  
People v. Jamison
, No. 80967 (April 19, 2001).  The State chose to prosecute the defendant for theft instead of a criminal provision of the Solicitation for Charity Act, most likely because theft in this case was a felony based on the defendant’s criminal history.  It could properly do so.  The defendant does not argue that the State failed to prove any elements of those charged offenses.  Therefore, this issue is without merit.

VI.  Ineffective Assistance Claims

Finally, the defendant argues that he received ineffective assistance of counsel at trial and at post-trial proceedings.  He claims that his trial counsel was ineffective in three ways:  (1) counsel failed to seek dismissal of the charges on the grounds that the prosecutor did not have standing to prosecute  violations of the Solicitation for Charity Act (225 ILCS 460/9(a)
 (West 1998)); (2) he failed to review documents produced by the State relating to the finances of Veterans Family Welfare, failed to conduct any examination or cross-examination of the expenditures of that organization, and failed to use information given to him by the defendant as to his financial condition; and (3) he failed to include Chase Ingersoll as a potential witness.  The defendant also claims the public defender who represented him at post-trial proceedings was ineffective in three ways:  (1) he, too, failed to raise the standing issue; (2) he failed to make any argument as to the sufficiency of the evidence; and (3) he failed to challenge the propriety of the sentence.

Ineffective assistance of counsel is proven when: 

(1) counsel’s representation falls below an objective standard of reasonableness such that the trial results were unreliable; and (2) the defendant is prejudiced by the unprofessional conduct.  
People v. Albanese
, 125 Ill. 2d 100, 106, 531 N.E.2d 17, 19 (1988).  If the court can determine that the defendant suffered no prejudice, then it need not determine that counsel’s representation was deficient.  
Strickland v. Washington
, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069 (1984).  

We shall first address the ineffective claims made against trial counsel.  As previously noted, the State had standing to prosecute violations of the Act in this case.  Therefore, counsel was not ineffective for failing to seek dismissal of the charges on that ground.  Next, the defendant has failed to identify what documents trial counsel failed to find and introduce at trial and what the relevance of those documents would have been.  Our review of the record indicates that trial counsel represented the defendant as competently as possible without the defendant’s assistance after the defendant failed to appear for trial and was tried 
in
 
absentia
.  Therefore, we find no error on this point.  Finally, trial counsel was not ineffective for failing to include Chase Ingersoll as a witness.  The defendant claims that he would have called Ingersoll to testify about the defendant’s finances and about Veterans Families Welfare.  However, nothing in the record indicates that Ingersoll had any such information.  A claim of ineffective assistance of counsel involving matters not in the record are not appropriately reviewed on direct appeal.  
People v. Gilbert
, 224 Ill. App. 3d 624, 586 N.E.2d 1308 (1992). 

For the reasons already stated, the public defender who represented counsel at the post-trial stage was not ineffective for failing to raise the standing issue.  Counsel did attack the sufficiency of the evidence in his post-trial motion.  After he withdrew, the public defender added to this motion.  Those issues were presented to the trial court and rejected.  Finally, post-trial counsel was not ineffective for failing to challenge the propriety of the sentence.  First, 
Apprendi
 was not decided until after the defendant was sentenced, so counsel could not have anticipated a change in the law.  
People v. Apprendi
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  Second, as we have previously held, the defendant was properly sentenced to consecutive terms of imprisonment in this case.  Accordingly, the defendant did not suffer ineffective assistance of trial or post-trial counsel.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.    

HOLDRIDGE and LYTTON, J.J., concur.