TALMITCH JACKSON *et al.*, Plaintiffs-Appellants, v. CALLAN PUBLISHING, INC., d/b/a Public Safety Services, *et al.*, Defendants-Appellees (Salvatore Triveri *et al.*, Defendants).

First District (1st Division)   Nos. 1—03—2942, 1—03—3609 cons.

Opinion filed February 28, 2005.

Law Office of Martin L. Glink, of Arlington Heights, for appellants.

Michael A. Ficaro and Joel A. Blanchet, both of Ungaretti & Harris, L.L.P., of Chicago, for appellee Callan Publishing, Inc.

Vincenzo Chimera, of Law Offices of Vincenzo Chimera, of Evergreen Park, for other appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs Talmitch Jackson and Michael Byrne are disabled Chicago police officers and members of the Chicago Fraternal Order of Police Lodge #7 (the FOP), which is the exclusive collective bargaining representative for all sworn police officers. Plaintiffs brought this class action to impose a constructive trust on certain funds that were collected as part of a fundraising campaign in Illinois on behalf of disabled Chicago police officers and families of Chicago police officers killed in the line of duty. Plaintiffs alleged that Callan Publishing, Inc. (Callan), Safety Publications, Inc. (Safety), Safety's officers, directors and some of its retained professional solicitors, the FOP and some of its officers had misused, misapplied and misappropriated the donations. The circuit court dismissed the action as to defendants Callan, Safety, and Safety's coowners/officers/directors Adam Herdman and Arthur Olivera on the grounds that those defendants owed plaintiffs no common law fiduciary duty and, even if a statutory duty existed pursuant to the Solicitation for Charity Act (Act) (225 ILCS 460/1 *et seq.* (West 2002)), plaintiffs would not be in a position to pursue an action based on a breach of that duty, as the Attorney General had the exclusive authority to maintain such an action. The remaining defendants, including the FOP, were not dismissed and are not party to this appeal. Plaintiffs now appeal. For the reasons that follow, we reverse and remand.

On March 28, 2003, plaintiffs filed a complaint which generally alleged "negligent administration, misuse, mishandling, and inappropriate disbursement of millions of dollars of donations collected from the public." The specific allegations in the complaint are summarized as follows. In or about June of 2000, the FOP entered into a contract with Callan to solicit and collect funds for its members. The contract

gave Callan the authority to subcontract the fundraising activity to other entities, and Callan hired Safety to perform some of the fundraising. When soliciting public donations on behalf of the FOP for disabled officers, officers killed in the line of duty, and their wives, widows and families, Callan and Safety did not inform the public that their fee amounted to approximately 78% of the donations so that only 22% would go to the FOP or police officers and their families. For the year 2001, Safety reported raising $381,981.18 on behalf of the FOP, and charged fees and commissions of $297,945.36; for the year 2002, Safety reported raising $179,423.00 on behalf of the FOP, and charged fees and commissions of $139,949.94; Callan and Safety raised additional funds which were not reported to the State of Illinois as required by statute; and Safety utilized persons with criminal records, including defendants Triveri and Koronakos, to solicit donations from the public. Plaintiffs claimed that the public relied on defendants' representations and gave donations expecting that all or most of the funds would be used for the benefit of disabled officers, officers killed in the line of duty, and their wives, widows and families. Plaintiffs sought, in pertinent part, a ruling that defendants were not entitled to compensation for their fundraising activities, an accounting of collected funds, a formation of a constructive charitable trust from a portion of the proceeds for the benefit of the disabled Chicago police officers of the FOP and/or money damages.

We note that in the FOP-Callan contract, which was attached to the complaint and is part of the record on appeal, the FOP represented that it was a membership and labor organization serving its members, not a charitable organization, and that neither the FOP nor the fundraising program was organized or operated as or for a charitable, benevolent, philanthropic, patriotic or eleemosynary[1] organization or purpose. The contract used the term "sponsorship revenue" for the gross funds raised and the term "royalty payments" for the amounts due to the FOP under the contract. Callan was to pay the FOP "royalty payments" in the amount of 22% of collected "sponsorship revenue" on a weekly basis. Callan was to keep the remaining 78% of collected "sponsorship revenue." The contract further provided that Callan was an independent company and not in any manner an employee or agent of the FOP and, similarly, no persons or entities performing services in connection with the "sponsorship" program were agents or employees of the FOP.

Callan moved to dismiss the complaint on the grounds that it involved substantially the same parties, was based on many of the

---

[1] of, relating to, or supported by charity. Webster's Third New International Dictionary 733 (1993).

same factual allegations and sought virtually identical relief as a pending action filed by the Attorney General of Illinois (the AG action) prior to the commencement of this action. Callan asserted that the instant action was duplicative of the AG action and therefore dismissible under section 2—619(a)(3) of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619(a)(3) (West 2002)) and further asserted that the Act preempted plaintiffs' common law claims. Callan also asserted that even if plaintiffs' claims were not barred by the ongoing AG action and preempted by the Act, plaintiffs failed to plead any facts showing that they had any relationship with Callan, let alone a fiduciary relationship that would give rise to a duty.

The record discloses that the AG action was filed in November of 2002, against the same defendants, with the exception that the FOP and its officers were not joined.[2] The AG action was brought pursuant to both the Act and the common law. The AG complaint alleged, in essence, that Callan, Safety and Safety's coowners/officers/directors Herdman and Olivera engaged in unlawful charitable fundraising practices on behalf of the FOP and others in that they failed to meet the Act's registration and reporting requirements; Callan violated the Act by subcontracting the fundrasing operations to Safety; and Safety violated the Act by employing convicted felons Triveri and Koronakos to solicit charitable contributions. The AG complaint further alleged that the foregoing conduct irreparably frustrated the ability of the FOP and the Attorney General to monitor the solicitation campaigns, and substantial sums of charitable monies solicited and collected by the defendants were unaccounted for and their uses were unknown. The AG action sought, in pertinent part, a ruling that the defendants in that action were not entitled to compensation for their fundraising activities, an accounting of collected funds, and a formation of a constructive trust for the benefit of charity and the people of Illinois. A copy of the complaint in the AG action is part of the record on appeal and indicates that it was filed on November 14, 2002. There are also references in the record to another action filed by the Attorney General on November 8, 2002 (the AG-Callan action), which named Callan as a defendant, as well as other entities and individuals not party to the action below. Although a copy of the complaint in that action was apparently included as an exhibit to Callan's motion to dismiss, it is missing from the record on appeal.

According to an affidavit filed below by one of plaintiffs' attorneys, plaintiffs filed a petition to intervene in the AG action on March 18, 2003. The record reflects that plaintiffs also attempted to intervene in

---

[2]People ex rel. Ryan v. Callan Publishing, Inc., 02 CH 20651 (Cir. Ct. Cook Co.).

the AG-Callan action. Again, although a number of exhibits pertaining to the interventions were apparently attached to the pleadings below, they too are missing from the record on appeal. According to the foregoing affidavit, the trial judge in the AG action ruled that plaintiffs could intervene, but could not add new defendants or new class members, allege new causes of action or seek a constructive trust for the benefit of the disabled Chicago police officers of the FOP, and plaintiffs withdrew the petition to intervene because the ruling eviscerated their class action.

In ruling on Callan's motion to dismiss in the instant action, the circuit court noted that the complaint asserted no breach of contract claims, but purported to assert only a claim of breach of a fiduciary duty. Plaintiffs did not then and do not now challenge that characterization. The court dismissed the action against Callan partly pursuant to section 2—615 on the grounds that no common law fiduciary relationship between Callan and plaintiffs had been established by the pleadings, and partly pursuant to section 2—619 on the grounds that plaintiffs had no standing to bring an action for a breach of statutory duty imposed by the Act because the Attorney General had the exclusive authority to enforce the Act's provisions. The court did not reach the argument that plaintiffs' action be dismissed pursuant to section 2—619(a)(3) as duplicative of the AG action.

Subsequently, defendants Safety, Herdman and Olivera jointly filed their motion to dismiss, which the court granted for the same reasons it granted Callan's motion. This appeal followed. The parties informed this court that after the action below was dismissed as to Callan and Safety, consent decrees were entered in the AG action and the AG-Callan action.

## ANALYSIS

Plaintiffs contend that they properly brought the common law action below and properly sought the equitable remedy of a constructive trust with respect to the charitable contributions defendants solicited and collected from the public. Plaintiffs further assert that they have a beneficial interest in the trust created by defendants for the benefit of disabled Chicago police officers and, therefore, the right to protect that interest. The essence of plaintiffs' argument is that their action is based on a common law fiduciary relationship and/or unjust enrichment and, therefore, not preempted by the Act.

As noted, the circuit court dismissed the action pursuant to section 2—615 for failure to state a cause of action because no facts were alleged establishing a common law fiduciary relationship and pursuant to section 2—619 on the ground that plaintiffs had no standing to pursue a breach of statutory duty imposed by the Act. A section 2—615 motion to dismiss attacks only the legal sufficiency of the complaint by alleging defects appearing on its face and does not raise affirmative

factual defenses. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.E.2d 1282, 1289 (1994). Such a motion should be granted if the complaint does not allege sufficient facts to state a cause of action. *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 918, 770 N.E.2d 684, 692-93 (2002). In comparison, a section 2—619 motion raises defects or defenses that negate a plaintiff's cause of action completely or refute crucial conclusions of law or conclusions of material fact unsupported by allegations of specific facts. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996). In ruling on a section 2—619 motion to dismiss, a court may consider external submissions of the parties. *Lawson*, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382. In either event, the review on appeal is generally *de novo*. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 68, 803 N.E.2d 988, 991 (2004).

The central issues here are whether plaintiffs' complaint alleged a legally cognizable wrong predicated on a fiduciary relationship against defendants Callan and Safety, and whether plaintiffs have the standing to complain. Plaintiffs first contend that the circuit court erred in dismissing the common law claims on section 2—615 grounds for failure to allege any facts tending to establish a common law fiduciary relationship between them and defendants. Plaintiffs argue that a common law fiduciary relationship was created when Callan, Safety and the FOP came into possession of the funds donated by the public for the benefit of disabled Chicago police officers and families of Chicago police officers killed in the line of duty, thereby becoming trustees of said funds with the attendant duty to maintain the trust in good faith for the beneficiaries-plaintiffs. Plaintiffs do not elaborate any further as to the mechanism by which the trust was created for their benefit, with the FOP, Callan and Safety as co-trustees. The parties do not dispute the existence of a fiduciary relationship between the FOP and plaintiffs, as they were members of that fraternal organization. However, as noted, this appeal is concerned with whether plaintiffs may maintain their action against Callan, retained as an independent contractor by the FOP, and Safety, Callan's subcontractor.

Plaintiffs contend that the law of trusts recognizes the wrong, their standing to complain and the remedy sought. A trust is widely defined as " 'a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' " (Emphasis omitted.) *Eychaner v. Gross*, 202 Ill. 2d 228, 253, 779 N.E.2d 1115, 1131 (2002), quoting Restatement (Second) of Trusts § 2 (1959). Similarly, a charitable trust is " 'a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is

held to equitable duties to deal with the property for a charitable purpose.' " (Emphasis omitted.) *Eychaner*, 202 Ill. 2d at 253, 779 N.E.2d at 1131, quoting Restatement (Second) of Trusts § 348 (1959). Generally, the requirements for the creation of a charitable trust are: the intention to create a trust; a definite subject matter or trust property; a charitable purpose; and delivery of the trust property to another person as a trustee. *Eychaner*, 202 Ill. 2d at 253, 779 N.E.2d at 1131. A charitable trust may be created by an *inter vivos* conveyance to another person as a trustee for a charitable purpose. Restatement (Second) of Trusts §§ 349, 351 (1959). The primary focus in determining the existence of a trust is on the intent of the settlor to establish a trust at the time of its alleged creation. *Eychaner*, 202 Ill. 2d at 254, 779 N.E.2d at 1132. "The manifestation of intention to create a trust 'may clearly appear from written or spoken words or may be determined by interpretation of the words or conduct of the settlor in the light of all the circumstances.' " *Eychaner*, 202 Ill. 2d at 255, 779 N.E.2d at 1132, quoting Restatement (Second) of Trusts § 4, Comment *a* (1959). No particular form of words or conduct is necessary to manifest the intention to create a trust; indeed, " '[a] trust may be created although the settlor does not use the word "trust." ' " *Eychaner*, 202 Ill. 2d at 255, 779 N.E.2d at 1132, quoting Restatement (Second) of Trusts § 24, Comment *b* (1959).

Here, as noted, plaintiffs alleged that defendants represented to the public that they were soliciting funds on behalf of disabled police officers and families of police officers killed in the line of duty. A trier of fact could reasonably infer that the individual donors, in response to defendants' solicitations, donated the funds with a manifest intention that their donations be ultimately distributed by defendants and the FOP to the disabled police officers and families of police officers killed in the line of duty. Contrary to the characterization deployed in the FOP-Callan contract describing the FOP's promotional activity as a sale of "sponsorships," the donors' intentions were, in all likelihood, not to purchase "sponsorships," but rather to benefit the class of plaintiffs in a charitable sense. It is the donor's intent and not that of the would-be trustee that is controlling and, generally speaking, a trust to benefit a portion of members of a lodge or society, where the group is large enough to make its welfare one of common concern, may be regarded as charitable (G. Bogert, Trusts and Trustees § 365, at 56-57 (rev. 2d ed. 1991)). Plaintiffs' complaint thus sufficiently alleges facts tending to establish all the requisite elements of the trust formation—the settlors' intention, the property (monetary donations), the charitable purpose, and the conveyance of the property to others (Callan, Safety and the FOP) as trustees. Once a charitable trust is established, the failure of a trustee will not destroy it; equity will substitute another trustee to prevent the trust from failing. *Eychaner*, 202 Ill. 2d at 278-79, 779 N.E.2d at 1145.

One might argue that the FOP was the sole trustee because defendants Callan and Safety were an independent contractor and its subcontractor, respectively, retained for the purpose of raising the funds, not to administer the trust, and, therefore, plaintiffs may not assert a cause of action against defendants for a breach of a trustee's fiduciary duty. Plaintiffs' complaint, however, postured that the donors reasonably relied on Callan and Safety's representations as offering to convey and distribute the donations to the disabled police officers and their families. Again, whether the donors, in response, conveyed the monies to Callan and Safety *as trustees* or whether the donors understood that Callan and Safety were mere intermediaries in the conveyance to the FOP as a sole trustee is a question of fact to be determined by the interpretation of the words or conduct of the donors in the light of all the circumstances. Moreover, even if it were determined that the FOP was the sole trustee, plaintiffs could still seek the imposition of a constructive trust on the monies retained by Callan and Safety.

▮A constructive trust is an equitable remedy that arises by operation of law, and the constructive trustee's sole duty is to transfer title and possession of wrongfully acquired property to the beneficiary. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 293, 499 N.E.2d 1319, 1326 (1986). In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain. *Suttles v. Vogel*, 126 Ill. 2d 186, 193, 533 N.E.2d 901, 904 (1988). It is well established that "[when a person's property has been wrongfully appropriated and converted into a different form, 'equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except those of a *bona fide* purchaser for value.' " *Sadacca v. Monhart*, 128 Ill. App. 3d 250, 256, 470 N.E.2d 589, 593-94 (1984), quoting 4 J. Pomeroy, Equity Jurisprudence § 1051, at 113 (5th ed. 1941). "[A] constructive trust may be imposed even though the person wrongfully receiving the benefit is innocent of collusion [citation]. By accepting the property, he adopts the means by which it was procured." *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 300, 735 N.E.2d 560, 566 (2000). A trier of fact is likely to find that the FOP breached its common law fiduciary duty as a trustee in permitting its fundraisers to retain an excessive portion of the donations, thereby depriving the class of beneficiaries of such. See *Hinckley v. Beardsley*, 28 Ill. App. 2d 379, 384, 171 N.E.2d 401, 404 (1961) (trust funds should be carefully guarded and protected, to the end that the charitable intent of the testator will be carried out and the trust property not be depleted by being used for purposes not

intended by the testator); 1 Shareholder Litigation § 10:11 (2004) (approval by trustees of excessive compensation or commissions may amount to a breach of a fiduciary duty). Accordingly, here, the court of equity can reach not only the monies received by the FOP, but also the monies retained by Callan and Safety to the extent that they are attributable to the FOP's breach of its fiduciary duty, the existence of the fiduciary relationship between the FOP and plaintiffs, as noted, not being in dispute. This precludes Callan and Safety's dismissal from the instant action.

■ We next address whether plaintiffs have the standing to bring the instant action. Where a charitable trust is involved, usually the Attorney General is the proper party to represent the public's interest in such. *Holden Hospital Corp. v. Southern Illinois Hospital Corp.*, 22 Ill. 2d 150, 157, 174 N.E.2d 793, 796 (1961); accord 4A W. Fratcher, Scott on Trusts § 391 (4th ed. 1989). However, it has been held that members of a class of ultimate beneficiaries of a charitable trust have rights protectible by a court of chancery and may bring an action against the trustees for a breach of their fiduciary duties. See *Paepcke v. Public Building Comm'n of Chicago*, 46 Ill. 2d 330, 341, 263 N.E.2d 11, 18 (1970) (members of the public, at least taxpayers who are beneficiaries of a trust created for the benefit of the public, have the right and standing to enforce it); *Brunnenmeyer v. Buhre*, 32 Ill. 183 (1863) (a charitable trust for members of a church is enforceable by them); *Home for Destitute Crippled Children v. Boomer*, 308 Ill. App. 170, 196-97, 31 N.E.2d 812, 824 (1941) (the ultimate beneficiaries of a charitable trust have rights which should be protected by a court of chancery and are proper parties to bring the suit). While there is also authority that the Attorney General may intervene in such a suit and take control of the portion of the litigation which relates to the public right (*Kolin v. Leitch*, 343 Ill. App. 622, 627-29, 99 N.E.2d 685, 687-88 (1951); 4A W. Fratcher, Scott on Trusts § 391 (4th ed. 1989)), without such intervention and until such intervention, plaintiffs have a right to maintain their suit. Whether the duplicative nature of plaintiffs' action warrants a dismissal under section 2—619(a)(3) is a related point discussed in detail below. Nevertheless, the foregoing analysis indicates that dismissal here was not proper for failure to state a cause of action or for lack of standing.

Defendants argue that, in any event, the dismissal would be proper pursuant to section 2—619 because plaintiffs' action is preempted by the Act.[3] We disagree. Plaintiffs distinguish their action from the AG action by asserting that the focus of the AG action was primarily on the *regulatory* violations, whereas plaintiffs' private action focuses on

---

[3]The court never discussed the preemption issue *per se.*

ensuring that the disabled Chicago police officers of the FOP receive the monies that the citizens of Illinois donated on their behalf. The parties agree that there is no private right of action to enforce the provisions of the Act.[4] See *City of Evanston v. Evanston Fire Fighters Ass'n*, 189 Ill. App. 3d 233, 244-45, 248-49, 545 N.E.2d 252, 259, 261-62 (1989); *People v. Knippenberg*, 325 Ill. App. 3d 251, 257, 757 N.E.2d 667, 672 (2001). However, the Act does not confine the Attorney General to solely prosecuting the regulatory violations (see 225 ILCS 460/9(a) through (c) (West 2002)), and the Attorney General may also pursue traditional common law claims (see *People ex rel. Scott v. Gorman*, 96 Ill. App. 3d 289, 291, 421 N.E.2d 228, 229-30 (1981); *People ex rel. Scott v. Police Hall of Fame, Inc.*, 60 Ill. App. 3d 331, 343, 376 N.E.2d 665, 674-75 (1978), *superceded on other grounds, Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 816 N.E.2d 345 (2004)). Thus, we must determine whether, as defendants contend, the Act precludes plaintiffs from maintaining a private action at common law to redress the wrongs which also amount to violations of the Act.

Defendants rely on a line of cases that does not deal specifically with preemption but, rather, addresses the question of whether a novel common law tort action should be recognized to complement or expand a statutory remedy for the wrong complained of.[5] These cases are inapposite. As plaintiffs point out, the common law action against a trustee for a breach of a fiduciary duty predates the Act by centuries. Defendants do not cite any authority articulating the preemption criteria a court must consider. We note that where the legislature enacts a statute establishing a means to enforce *existing rights*, there is no presumption that the statutory means is intended either as an exclusive remedy or to abolish other actions at common law or equity; the legislature usually must express or manifest the intent to give the statute such a preemptive effect. *Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A*, 218 Ill. App. 3d 521, 526, 578 N.E.2d 621, 624-25 (1991). Nothing in the Act or its legislative history indicates that it is intended to be the sole remedy under the circumstances here. *Cf. Cunningham v. Brown*, 22 Ill. 2d 23, 28-30, 174 N.E.2d 153, 156-57 (1961) (the Liquor Control Act provided the sole remedy against tavern owners and operators for injuries resulting as a consequence of intoxication; the Act was not intended to comple-

---

[4]An action may be brought by the Attorney General (225 ILCS 460/9(a) (West 2002)), by the State's Attorney (*People v. Knippenberg*, 325 Ill. App. 3d 251, 257 (2001)) or by a "Public Safety Personnel Organization affected by the violation" (225 ILCS 460/9(k) (West 2002)).

[5]Cunningham v. Brown, 22 Ill. 2d 23, 174 N.E.2d 153 (1961); *Debolt v. Mutual of Omaha*, 56 Ill. App. 3d 111, 371 N.E.2d 373 (1978); *Combs v. Insurance Co. of Illinois*, 146 Ill. App. 3d 957, 497 N.E.2d 503 (1986).

ment a common law remedy because no common law remedy in that area existed). We find no authority to support defendants' contention that the Act preempts a common law claim for a breach of a fiduciary duty and conclude that the Act does not bar plaintiffs from maintaining their action at common law.

Defendants, however, argue that even if there is no preemption, dismissal of the claims against them was proper under section 2—619(a)(3) of the Code because plaintiffs' claims were duplicative of claims in the then-pending AG action. This argument mischaracterizes the circuit court's ruling. While it is true that defendants in their motions to dismiss argued duplicity of the actions as one of the grounds for dismissal, the circuit court's order does not reflect its consideration of that argument, as the court dismissed the action on alternative grounds stated above. However, we may affirm a dismissal on any ground warranted, regardless of whether it was relied upon by the circuit court and regardless of whether the reason given by the circuit court was correct. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12 (1983).

Under section 2—619(a)(3), involuntary dismissal of an action is appropriate if "there is another action pending between the same parties for the same cause." 735 ILCS 5/2—619(a)(3) (West 2002). As our supreme court stated:

> "It is entirely clear that the pendency before different judges of separate suits involving identical parties and issues is incompatible with the orderly and efficient administration of justice." *People ex rel. Phillips Petroleum Co. v. Gitchoff*, 65 Ill. 2d 249, 257, 357 N.E.2d 534, 538 (1976).

The actions need not be identical; a substantial similarity will suffice. *Gitchoff*, 65 Ill. 2d at 255, 357 N.E.2d at 537. With respect to whether the two actions are for the same cause, the crucial inquiry is whether both arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof, or relief sought materially differs between the two actions. *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 786, 699 N.E.2d 1095, 1100 (1998). In other words, the focus of the inquiry is on whether the relief requested rests on substantially the same facts. *Kapoor*, 298 Ill. App. 3d at 786, 699 N.E.2d at 1100. We agree with defendants that the action here and the AG action are for the same cause because both arose out of the same conduct of Callan and Safety with respect to the Illinois fundraising campaign on behalf of the FOP.

A somewhat thornier question is whether the parties in both actions are the same. Again, the parties need not be identical. *Gitchoff*, 65 Ill. 2d at 255, 357 N.E.2d at 537. We first note that the defendants in both actions are identical, with the exception that the FOP and its officers (the FOP defendants) were not named defendants in the AG

action. However, plaintiffs' action below was not dismissed as to the FOP defendants. Thus, defendants dismissed from the instant action are also defendants in the AG action. Plaintiffs argue that there is no sameness with respect to the plaintiffs in both actions. Defendants respond that plaintiffs are deemed to be parties to the AG action and, in support, rely on *Bonovich v. Convenient Food Mart, Inc.*, 18 Ill. App. 3d 884, 886, 310 N.E.2d 710, 711 (1974) (Attorney General's action filed in the name of the People of the State of Illinois was brought on behalf of all people in the state, including those adversely affected by the defendant's alleged violations). *Bonovich* held that an action brought by the Attorney General for violations of the Illinois Antitrust Act barred the private plaintiff from thereafter maintaining the same action against the same defendants. *Bonovich*, 18 Ill. App. 3d at 886, 310 N.E.2d at 710. Plaintiffs point out that subsequently this court in *People ex rel. Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1083, 428 N.E.2d 1096, 1100 (1981), refused to accept *Bonovich*'s definition of "same plaintiffs" as overly broad. Since *Climatemp*, however, another test of the same parties has been widely used. This test is satisfied if the litigants' interests are sufficiently similar, even though the litigants differ in name or number. *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1092, 729 N.E.2d 36, 40 (2000); *Kapoor*, 298 Ill. App. 3d at 786, 699 N.E.2d at 1100; *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 788, 659 N.E.2d 89, 92 (1995); *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 319, 653 N.E.2d 825, 828 (1995); *Katherine M. v. Ryder*, 254 Ill. App. 3d 479, 487, 627 N.E.2d 42, 48 (1993); *Skipper Marine Electronics, Inc. v. Cybernet Marine Products*, 200 Ill. App. 3d 692, 695-96, 558 N.E.2d 324, 326 (1990).

Plaintiffs, again, assert that their interests differ from those of the Attorney General because they are not attempting to enforce the provisions of the Act or otherwise regulate how paid solicitors conduct their business but, rather, seek accounting and recovery of the moneys raised by defendants on their behalf. However, the complaint in the AG action not only alleged that defendants violated regulatory provisions of the Act, but further alleged that "[h]undreds of thousands of dollars were raised with little given to the charitable causes" and sought, in pertinent part, accounting, forfeiture of compensation, and imposition of a constructive trust on solicited funds for the benefit of charity and the people of Illinois. Thus, the only notable difference between the relief sought in both actions is that plaintiffs here sought a constructive trust imposed for the benefit of the disabled Chicago police officers of the FOP, whereas the Attorney General sought a constructive trust for the benefit of charity and the people of Illinois, a wider class of potential beneficiaries, but a class of which plaintiffs are members. In this respect, we reiterate what was stated earlier— that the Attorney General is a proper party to represent the public's

interest in a charitable trust, even more so where, as here, the trust was funded by donations from the public. Moreover, the Attorney General may intervene in an action brought by the beneficiaries of a charitable trust and take control of that portion of the litigation which relates to public interest, including moving for its dismissal. See *Kolin*, 343 Ill. App. at 627-29, 99 N.E.2d at 687-88. We, therefore, conclude that plaintiffs' and the Attorney General's interests are aligned, and plaintiffs' right to maintain an action under such circumstances is subordinate to that of the Attorney General.

Nevertheless, "even when the 'same cause' and 'same parties' requirements are met, section 2—619(a)(3) does not mandate automatic dismissal. Rather, the decision to grant or deny defendants' section 2—619(a)(3) motion is discretionary with the trial court." *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447, 493 N.E.2d 1045, 1053 (1986). The factors that the court should consider include prevention of multiplicity; vexation and harassment; likelihood of obtaining complete relief; and the potential *res judicata* effect of another judgment. *Kellerman*, 112 Ill. 2d at 447-48, 493 N.E.2d at 1053. In the ordinary course, because the circuit court did not consider section 2—619(a)(3) as a ground for dismissal and therefore did not apply the foregoing discretionary factors, the matter would be remanded. However, a remand to consider the discretionary factors would now be improper because the AG action has since settled and, therefore, is no longer "pending."

■ Plaintiffs next argue that we may not uphold the dismissal on *res judicata* grounds. Plaintiffs assert that because the AG action and AG-Callan actions settled, they never reached an adjudication on the merits and, therefore, there is no *res judicata* effect on the instant action. The basic principles of the doctrine of *res judicata* have been summarized as follows:

> "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. [Citations.] The doctrine extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit. [Citations.] For the doctrine of *res judicata* to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35, 665 N.E.2d 1199, 1204 (1996).

Preliminarily, we note that the second requirement poses no obstacle to the application of *res judicata* here. A cause of action for the purposes of *res judicata* is defined by the facts which give a plaintiff a right to relief (*Rein*, 172 Ill. 2d at 338, 665 N.E.2d at 1206), which is

the same transactional definition used in the context of a section 2—619(a)(3) motion to dismiss. As discussed, the implicated causes of action are the same. Whether the first requirement for *res judicata* is met depends on whether a dismissal pursuant to a settlement constitutes a final judgment on the merits. There is a split of authority in Illinois cases as to whether a dismissal with prejudice pursuant to a settlement agreement is sufficient to raise *res judicata*. *State Farm Insurance Co. v. Illinois*, 49 Ill. Ct. Cl. 61 (1996) (noting the split of authority); compare *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 896, 713 N.E.2d 239, 241 (1999) (order entered pursuant to a settlement constituted a final judgment on the merits for the purposes of *res judicata*), and *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 252, 645 N.E.2d 543, 548 (1994) (an agreed order is not a judicial determination of the parties' rights but rather is a recordation of the agreement between the parties and, like any other agreement, its interpretation is governed by the law of contracts). The modern view generally recognizes that a valid consent judgment is entitled to a *res judicata* effect, so as to preclude relitigation of the same claim or cause of action as was covered by such judgment. See Annotation, *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R. 3d 1170 (1979).

The parties have not briefed us on the issue of whether the dismissal of this action may be warranted due to the preclusive effect of the settlements reached in the AG action and the AG-Callan action. Nor have the terms of the settlement agreements in the AG action and the AG-Callan action been presented to the circuit court because they came after the circuit court's order of dismissal was entered. Assuming that a valid settlement agreement operates as a merger of all included claims and a bar thereto (*Keim v. Kalbfleisch*, 57 Ill. App. 3d 621, 624, 373 N.E.2d 565, 568 (1978)), such an agreement nevertheless has no *res judicata* effect on those who were not parties to it or their privies (*People ex rel. Ulrich v. Bosmann*, 279 Ill. App. 3d 36, 45, 664 N.E.2d 119, 125 (1996)).[6] Here, there is no nominal identity of the parties. We therefore next examine whether the parties were in privity. The modern view recognizes that privity may exist where a person is so identified in interest with another that he represents the same

---

[6]The preclusive effect of a settlement agreement under the theory of *res judicata* is essentially the same as under the contract law. Under the contract theory, the consent decree binds only the consenting parties and their privies. See *Picardi v. Chicago Truck Drivers*, 581 F. Supp. 794, 797-98 (N.D. Ill. 1984).

legal right. *In re L&S Industries, Inc.*, 989 F.2d 929, 934 (7th Cir. 1993) ("[P]rivity *** turns on an identification of interests. *Only nonparty interests adequately represented in a prior proceeding can be subject to res judicata*" (emphasis added)); *Picardi v. Chicago Truck Drivers*, 581 F. Supp. 794, 797 (N.D. Ill. 1984) ("Privity for *res judicata* purposes expresses the idea that a person is so identified in interest with the party in the previous litigation that precisely the same legal right in respect to the subject matter is involved"); see generally 47 Am. Jur. 2d *Judgments* § 663 (1995). On a different but related note, with respect to the right to appeal from a consent judgment,[7] Illinois law holds that a settlement agreement does not bind and preclude appeal by those whose interests were not fully and adequately represented. *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.*, 85 Ill. 2d 458, 471-74, 426 N.E.2d 860, 865-66 (1981); *City of Chicago ex rel. Konstantelos v. Duncan Traffic Equipment Co.*, 102 Ill. App. 3d 304, 316-17, 429 N.E.2d 1223, 1231-32 (1981), *aff'd*, 95 Ill. 2d 344, 447 N.E.2d 789 (1983).

Although plaintiffs were not parties to the settlement agreements in the AG action and the AG-Callan action, the weight of the case law discussed in our analysis of dismissal pursuant to section 2—619(a)(3) supports the conclusion that plaintiffs' interests were presumptively represented by the Attorney General. However, plaintiffs call into question whether their interests were, in fact, represented fully and adequately. In this respect, *Duncan Traffic Equipment* is on point. In *Duncan Traffic Equipment*, a taxpayer brought a suit in the name and for the benefit of the City of Chicago (the City) against Duncan Traffic Equipment (Duncan), a parking meter inspection company, and others to recover monies paid by the City for inspections that were never performed. *Duncan Traffic Equipment*, 102 Ill. App. 3d at 306, 429 N.E.2d at 1224. Some time later, the City filed its own suit involving the same subject matter and against some of the same defendants. *Duncan Traffic Equipment*, 102 Ill. App. 3d at 306, 429 N.E.2d at 1224. The taxpayers's suit was involuntarily dismissed. *Duncan Traffic Equipment*, 102 Ill. App. 3d at 306, 429 N.E.2d at 1224. Within 21 days of the dismissal of the taxpayer's suit, the City's suit was voluntarily dismissed pursuant to a settlement agreement between the City and the defendants named in the City's suit, wherein the defendants agreed to pay the City a sum of $5,000. *Duncan Traffic Equipment*, 102 Ill. App. 3d at 306, 312, 429 N.E.2d at 1224, 1228. The taxpayer appealed the dismissal of both his suit and the City's suit.

---

[7]It is well settled that ordinarily a consent judgment is not subject to appellate review. *Massell v. Daley*, 404 Ill. 479, 483 (1949).

*Duncan Traffic Equipment,* 102 Ill. App. 3d at 306, 429 N.E.2d at 1224. On appeal, the defendants contended that the City bound all taxpayers by the settlement agreement and, therefore, the taxpayer could not appeal. *Duncan Traffic Equipment,* 102 Ill. App. 3d at 316, 429 N.E.2d at 1231. This court disagreed and held that the $5,000 settlement agreement between the City and the defendants was not enforceable against taxpayers because taxpayers were not fully and adequately represented when the agreement was entered into "in a swift fashion, with no depositions or meaningful discovery," and the settlement was based solely on the question of payment for work never performed in the inspection of 636 parking meters, although in his complaint the taxpayer alleged that the City paid Duncan $270,681 for "not inspecting" 34,974 meters. *Duncan Traffic Equipment,* 102 Ill. App. 3d at 316, 429 N.E.2d at 1231-32. Likewise, here, plaintiffs' position throughout indicates that they would argue that the Attorney General did not fully and adequately represent their interests, and only a partial settlement was intended by the agreements, encompassing only the violations of the regulatory aspects of the Act. Unlike *Duncan Traffic Equipment,* the record before us is not sufficiently comprehensive to permit us to resolve these issues. Under the circumstances, these questions are more appropriate for the circuit court to resolve on remand. See 47 Am. Jur. 2d *Judgments* § 663 (1995) (generally, the question of who is a privy is a factual one, requiring a case-by-case examination).

In the event the circuit court determines there is no *res judicata* effect due to the lack of privity, the court must next review the settlement agreements to determine whether plaintiffs' action may nevertheless be dismissed as moot. In contrast to *res judicata,* the related doctrine of mootness is not concerned with the formal requirements of a final judgment on the merits coupled with identity of causes of action and identity or privity of parties. Rather, a case is moot when it does not involve any actual controversy or where the issues involved in the trial court have ceased to exist. *People ex rel. Newdelman v. Weaver,* 50 Ill. 2d 237, 241, 278 N.E.2d 81, 83 (1972). In other words, a case is moot where "plaintiffs have secured what they basically sought." *Weaver,* 50 Ill. 2d at 241, 278 N.E.2d at 83 (an action for *mandamus* was moot where the Department of Public Aid had already issued the desired regulation in compliance with a separate proceeding). *Katherine M.* illustrates the application of the mootness doctrine to facts similar to the instant case. In *Katherine M.,* the plaintiffs, representing a class of children in the custody of the Department of Children and Family Services (the DCFS) who were exposed to, suffered or perpetrated sexual abuse, sued the DCFS, seeking specialized

services. *Katherine M.*, 254 Ill. App. 3d at 481, 627 N.E.2d at 44. The DCFS moved to dismiss pursuant to section 2—619(a)(9) on the grounds that the action was rendered moot by a federal consent decree entered in another action brought against the DCFS by a class of all children in the DCFS custody. *Katherine M.*, 254 Ill. App. 3d at 482, 627 N.E.2d at 45. Under the consent decree, the DCFS was to achieve a comprehensive reform of the child welfare system in Illinois, including the identification of and provision for any special needs of the children who suffered sexual abuse. *Katherine M.*, 254 Ill. App. 3d at 484-85, 627 N.E.2d at 46-47. In addition, the implementation plan prepared pursuant to the consent decree indicated that the DCFS was in the process of identifying and developing services for children and adolescents who were sexual abuse perpetrators. *Katherine M.*, 254 Ill. App. 3d at 485, 627 N.E.2d at 47. This court therefore found that the plaintiffs' needs were fully covered by the federal consent decree and the implementation plan and, consequently, their action was moot. *Katherine M.*, 254 Ill. App. 3d at 486, 627 N.E.2d at 47-48. Here, on remand, the circuit court, after examining the settlement agreements in the AG action and the AG-Callan action, may very well find plaintiffs' action moot.

For the reasons set forth above, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL, P.J., and McBRIDE, J., concur.